UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROY WILLIAMS,

        *Plaintiff*,

    v.

MEDIALINKS TV, LLC,

        *Defendant.*

No. 22-cv-2427 (DLF)

**MEMORANDUM OPINION**

Plaintiff Roy Williams brings this employment action against MediaLinks TV, LLC. Before the Court is the defendant's Motion for Judgment on the Pleadings, Dkt. 14. For the reasons that follow, the Court will deny the motion.

**I.    BACKGROUND**[1]

Roy Williams, an African-American male who is now sixty-four years old, worked for MediaLinks TV, LLC, as a lighting technician and video engineer from January 2014 to January 2019. Compl. ¶¶ 3, 14. He "previously had forty-plus years of network [and] major market television production experience," *id.* ¶ 9, and had obtained "at least five secret service clearances for presidential and other high-level events," *id.* ¶ 13.

In January 2014, Williams was first hired by MediaLinks on a "part-time" basis. *Id.* ¶ 14. He "later learned" that "three of his White co-workers . . . who performed the same job . . . were paid a higher salar[y]." *Id.* ¶ 15. Williams continued to "consistently receive[] very good

---

[1] In resolving the defendant's motion, the Court has assumed the truth of the material factual allegations in the complaint, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), and any documents attached to the complaint or incorporated by reference, *see EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

employee evaluations and annual performance-based pay raises for his work," and he became a full-time employee in December 2016.  *Id.* ¶ 16.

On March 18, 2018, Williams was "working to resolve [a] lighting malfunction during a show" when he heard his younger, white female co-worker, Lora Ersbo, comment over her headset: "What the f*** is Roy doing on the ladder?  Roy is going to f*** the lights up.  He's not qualified to adjust the lights.  Paul should correct the problem."  *Id.* ¶¶ 18–25.  "Paul" referred to Paul Lenihan, a white male co-worker.  *Id.* ¶ 26.  After hearing Ersbo's comments, Williams asked another co-worker, Valente Miranda, "why he was being treated as such," to which Miranda responded: "We were just ragging on you!"  *Id.* ¶¶ 27–28.

On April 20, 2018, Williams requested to meet with his new supervisor, Manuel Samaniego, to express his concerns about Ersbo's "hostile, disparaging, and unprofessional conduct towards him."  *Id.* ¶ 32.  He reported similar concerns to Samaniego "three or more times" after this meeting, but Ersbo was not investigated or disciplined.  *Id.* ¶¶ 35, 39–40.

From November 20, 2018 through November 26, 2018, Williams was suspended from work.  *Id.* ¶ 41.  At a November 28, 2018 meeting following his return from work, Williams's superiors, Samaniego and Ursula Perales-Muretta, gave him a Corrective Action Notice explaining the reasons for his suspension.  Compl. ¶¶ 55–56; *see* Ex. B (Notice), Dkt. 14-4.  The Notice stated that Williams had violated Samaniego's newly implemented policy against use of a phone 10 minutes before a live or taped broadcast, Notice at 1; Compl. ¶ 37, and that Williams had engaged in "inappropriate comments and aggressive behavior" to another member of the studio team, Ersbo, Notice at 1; Compl. ¶ 56.  Ersbo "was not reprimanded or punished for her involvement" in the incidents described in the Notice.  Compl. ¶ 57.

At the same November 28 meeting, Williams presented his supervisors with a memo listing his complaints about Ersbo, as well as his perception that Ersbo was given "preferential treatment . . . for workplace violations in which she was not suspended or given time off." Compl. ¶¶ 46–47; Ex. A (Memo), Dkt. 14-3.  In the memo, he complained about the March 18 incident; that on another occasion Ersbo "was willing to let the operation suffer in order to try to get [him] in trouble," Memo at 3; and that on a third occasion Ersbo asked him to turn off a game he was watching during a broadcast, *id.* at 4.  He also admitted that, during the last incident, he "rais[ed] his voice and us[ed] a slang term 'Scuzz Bucket,'" used to refer to "unsavorable" behavior, to describe Ersbo.  *Id.*  Williams also informed his supervisors that he had completed an initial intake with the Equal Employment Opportunity Commission (EEOC) because he believed "he had a claim for hostile work environment."  Compl. ¶ 49.  In response, Samaniego "informed [Williams] that because of his age and experience, he should be able to absorb the comments of Ersbo."  *Id.* ¶ 52.  Ersbo had not been and was not later reprimanded or disciplined for her involvement in any of the incidents listed in Williams's memo.  *Id.* ¶ 57.

Finally, on January 14, 2019, Williams's employment was terminated "due to write ups for two unapproved late arrivals."  *Id.* ¶ 59.  According to Williams, one late arrival occurred following a surgery and had been approved by Samaniego; as to the second late arrival, he had informed Samaniego that he would arrive late when his vehicle was stuck in a snowstorm.  *Id.* ¶ 60. Another basis for Williams's termination was his participation in a "conversation [at work] about the possibility of purchasing a firearm" to protect his home in the aftermath of two break-ins.  *Id.* ¶¶ 63–65.  None of the four or five other co-workers who participated in the conversation were disciplined for it.  *Id.* ¶ 71.

On June 5, 2019, Williams filed a complaint against MediaLinks with the D.C. Office of Human Rights, cross-filed with the EEOC. *Id.* ¶ 77. His Request to Withdraw was granted on January 18, 2022, and the EEOC issued a Notice of Right to Sue on May 31, 2022. *Id.* ¶¶ 78, 80. Williams filed a complaint against MediaLinks in D.C. Superior Court containing claims for retaliation, age discrimination, and race discrimination. *Id.* ¶¶ 81–101. On August 15, 2022, MediaLinks removed the complaint, Dkt. 1, and filed an answer to the complaint, Dkt. 10. It then moved for judgment on the pleadings, Dkt. 14.

## II.   LEGAL STANDARDS

Because MediaLinks already filed an answer, Dkt. 10, to Williams's complaint, the pleadings are closed, and it has properly moved for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). It has attached two exhibits to its motion, Dkt. 14-3; Dkt. 14-4, that the Court may consider without converting the motion into a motion for summary judgment because each exhibit is "referred to in the complaint and is central to [Williams's] claim." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd* 38 F. App'x 4 (D.C. Cir. 2002); Compl. ¶¶ 45–48 (discussing contents of the November 28 memo), 55–56 (discussing contents of Corrective Action Notice); *see also Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 85 (D.D.C. 2018).

A movant is entitled to judgment on the pleadings under Rule 12(c) if it "demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (cleaned up). Here, the Court reviews the motion for judgment on the pleadings under the same standard that governs a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See McNamara v. Picken*, 866 F. Supp. 2d 10, 14 (D.D.C. 2012); *Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 35 (D.C. Cir. 2004). Under this standard, to survive the Rule 12(c) motion, a complaint

4

must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.   ANALYSIS

#### A.   Age Discrimination (Count II)

In count two, Williams has plausibly alleged a claim for age discrimination under the D.C. Human Rights Act. *See* D.C. Code § 2-1401.01. A *prima facie* claim for age discrimination requires that the plaintiff show that he "(1) was at least forty years of age, (2) suffered an adverse

5

employment action, and (3) that there was some reason to believe that the adverse employment action was based on the employee's age." *Badwal v. Bd. of Trs. of Univ. of Dist. of Columbia*, 139 F. Supp. 3d 295, 315 (D.D.C. 2015). But "a plaintiff alleging employment discrimination is not required to plead every element of the *prima facie* case in order to survive a motion to dismiss . . . as long as the complaint meets the plausibility standard." *Id.* (citing *Jones v. Air Line Pilots Ass'n Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011)).

The complaint plausibly alleges the elements of a *prima facie* case. Williams has alleged that, at the time of his employment, he was over 40 years old. *See* Compl. ¶ 3. He suffered an adverse employment action when he was terminated in January 2019.[2] *Id.* ¶ 88; *see* D.C. Code § 2-1402.11(a)(1)(A). As to the causation element, even though "the standard at the motion to dismiss stage is not high," *Badwal*, 139 F. Supp. 3d at 315, it is not enough for a plaintiff to simply allege that he was "treated unfairly" and that he was over 40, *see Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017). Rather, a plaintiff must make "sufficient allegations demonstrating that such treatment stemmed from discrimination on the basis of age." *Id.* Williams has done so. He has alleged that his supervisor, Samaniego, responded to his concerns about Ersbo by stating that "because of [Wiliams's] age and experience, he should be able to absorb [Ersbo's] comments." Compl. ¶ 52. Stray, "discriminatory remarks by uninvolved co-workers or remarks that have no bearing on the employment decision in question" are not sufficient to establish an inference of age discrimination. *Pederson v. Mills*, 636 F. Supp. 2d 78, 85 (D.D.C. 2009). But here, the

---

[2] It is unclear from Williams's complaint and his opposition brief whether he is alleging that MediaLinks's failure to investigate his complaints about Ersbo also constitutes an actionable adverse action for purposes of his age discrimination claim, or simply is additional evidence of a hostile work environment. *See* Compl. ¶¶ 89–90; Pl.'s Opp. at 8–10, Dkt. 16. The Court need not address this issue, however, because Williams's alleged January 2019 termination unquestionably is an actionable adverse action.

discriminatory comment was made by Williams's supervisor—who reported incidents for which Williams was disciplined, *see* Compl. ¶¶ 51–52, and that led to Williams's termination, *see id.* ¶¶ 37, 60—less than two months before his termination. Because Samaniego's allegedly discriminatory remark "ha[d] some nexus to the eventual employment decision," at this stage it is sufficient to support Williams's allegation that his termination was causally connected to his age. *Pederson*, 636 F. Supp. 2d at 85; *see also Lucas v. Paige*, 435 F. Supp. 2d 165, 170–171 (D.D.C. 2006) (finding a workplace remark to be evidence of discrimination where the statement "was made by an individual with the power to influence Plaintiff's termination, and the remark was temporally close in time to the termination").[3]

### B.     Retaliation (Count I)

In count one, Williams has plausibly pleaded a retaliation claim. To adequately plead a retaliation claim, a plaintiff "must [allege] (1) that [he] engaged in statutorily protected activity; (2) that [he] suffered a materially adverse action by [his] . . . employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). To allege that he suffered a materially adverse action, a plaintiff must allege that the action "well might . . . dissuade[] a

---

[3] Williams's claims of age discrimination under Title VII and 42 U.S.C. § 1981, *see* Compl. ¶ 91, are not viable, however, because age is not a protected status under either Title VII or § 1981, *see Greer v. Bd. of Trs. of Univ. of Dist. of Columbia*, 113 F. Supp. 3d 297, 305 (D.D.C. 2015); 42 U.S.C. § 1981(a)–(c).

As alleged, Williams also fails to plead a viable hostile work environment theory to support his age discrimination claim. By Williams's own admission, "he enjoyed his job, except for the workplace actions of Ersbo." Compl. ¶ 50. Even taken together, Ersbo's small number of verbal insults, *see* Compl. ¶ 25; *see also Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005), coupled with MediaLinks's failure to investigate Williams's complaints about Ersbo's conduct, are not sufficiently severe or pervasive to rise to the level of a hostile work environment. *See Bell*, 398 F. Supp. 2d at 92 (D.D.C. 2005); *Casey v. Mabus*, 878 F. Supp. 2d 175, 189–90 (D.D.C. 2012); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 78 (D.D.C. 2013).

reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (internal quotation marks omitted). The action need not "affect the terms and conditions of employment," *id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)), but it must "result in tangible job consequences like a change in pay, position, or promotional opportunities," *Heavans v. Dodaro*, No. 22-cv-836, 2022 WL 17904237, at *9 (D.D.C. Dec. 23, 2022).

Williams has alleged that he engaged in statutorily protected activity by informing his supervisors on November 28, 2018, that he "felt compelled to seek help from the EEOC," including by completing an initial intake form. Compl. ¶¶ 48–49. He has also alleged that he suffered a materially adverse action when he was terminated on January 2019. *See Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 100 (D.D.C. 2007). Finally, the relative proximity of his protected activity on November 28, 2018 to his January 14, 2019 termination is, at least at this stage, sufficient to support an inference of a causal connection between the two events. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (recognizing a presumption of causation where "the employer had knowledge of the employee's protected activity, and . . . the adverse [] action took place shortly after the activity"); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 (D.D.C. 2007) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone."). Williams has thus plausibly pleaded a retaliation claim based on the theory that he suffered an adverse action when he was terminated.[4]

---

[4] In contrast, MediaLinks's failure to investigate Williams's complaints about Ersbo's behavior, *see* Compl. ¶¶ 84–85, is not an adverse action sufficient to support a retaliation claim. "A retaliatory failure-to-remediate claim is not actionable unless the underlying incident would itself be actionable." *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015). As discussed above, *supra* section III.A, "the incidents [MediaLinks] failed to remediate[, namely, Williams's handful of negative interactions with Ersbo,] would not themselves constitute a retaliatory hostile work environment," *id.*; *see also Brooks v. Grundmann*, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014).

Because Williams has pleaded facts that are "sufficient to cross the federal court's threshold" for a retaliation claim, the Court need not consider whether he has alleged sufficient additional facts to rebut MediaLinks's proffered non-retaliatory motivation for his termination, *see* Def.'s Mot. at 18. *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 24 (D.D.C. 2013) (citation omitted). "[A]t the motion-to-dismiss stage, a . . . plaintiff is not generally required to plead facts that specifically rebut a defendant's legitimate non[retaliatory] reasons or establish [pretext]." *Id.* at 23; *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002) (holding that employment discrimination plaintiff's complaint need not allege each element of a *prima facie* discrimination case, only "give[] . . . fair notice of the basis for [his] claims"). This is because MediaLinks's assertion that Williams was terminated for a variety of legitimate reasons is a "factual question, not a deficiency in [Williams's] pleading, and therefore . . . cannot be a basis for dismissing the . . . [c]omplaint at this stage." *Ryan-White*, 922 F. Supp. 2d at 29; *see also Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 40–41 (D.D.C. 2019) (refusing to consider, in context of motion for judgment on pleadings, whether plaintiff had rebutted legitimate, non-retaliatory reason for adverse action). Evaluating the legitimacy of MediaLinks's proffered justifications would be especially inappropriate here because Williams has alleged facts that, if proven, would call MediaLinks's explanations into question. *See* Compl. ¶¶ 60 (late arrivals were actually approved), 71 (other employees in conversation about firearm purchase were not disciplined). The Court will

---

("[T]he ordinary tribulations of the workplace, [such as] a series of petty insults, vindictive behavior, and angry recriminations[,] . . . are not actionable under Title VII." (cleaned up)). The relatively trivial nature of these underlying incidents distinguishes this case from one like *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006), in which a failure to investigate *was* actionable because the employer failed to investigate a death threat against the complaining employee, *see id.* at 1219–20; *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (drawing the same distinction).

therefore deny the defendant's motion as to Williams's theory that he was unlawfully retaliated against when he was terminated.

### C. Race Discrimination (Count III)

Finally, in count three, Williams has plausibly alleged that he was unlawfully discriminated against on the basis of his race when MediaLinks suspended him without pay and terminated him. Compl. ¶¶ 97, 99. These acts constitute actionable employment actions, *see Weng v. Solis*, 960 F. Supp. 2d 239, 248–49 (D.D.C. 2013), and Williams has alleged that MediaLinks's justifications for both actions were not attributable to legitimate reasons, including to those offered by MediaLinks in its briefing, *see* Def.'s Mot. at 18, Dkt. 14-1. He has alleged, for example, that he was suspended in part due to incidents involving Ersbo, yet Ersbo, who is white, "was not reprimanded or punished for her involvement in either." Compl. ¶¶ 56–57. He was also allegedly suspended for using his phone 10 minutes before a broadcast, but he was first informed of this rule against phone use when he was suspended—even though his co-workers were given advance notice of the rule or mere warnings for their first violation of the rule. *Id.* ¶¶ 37–38. What is more, Williams has alleged that the two "unapproved late arrivals" cited as reasons for his termination were actually approved or excusable, *id.* ¶ 60, and that other co-workers involved in his conversation about firearms were not disciplined, *id.* ¶ 71. Further, he has alleged that he was otherwise qualified for his position, *id.* ¶ 66, and that he "consistently received very good employee evaluations and annual performance-based pay raises for his work," *id.* ¶ 16.

"If true, these facts would show that [Williams's] termination was not attributable to either of the two most common legitimate reasons for termination: performance below the employer's legitimate expectations or the elimination of [his] position altogether." *Harris v. Dist. of Columbia Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (cleaned up). "Such a showing

is . . . certainly enough to survive a motion to dismiss." *Id.*; *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90–91 (stating the same where plaintiff alleged only that "defendants' proffered reasons for the actions taken are false"); *Chien v. Sullivan*, 313 F. Supp. 3d 1, 17–18 (D.D.C. 2018).  It may well be that Williams will not be able to develop evidence to support his factual allegations, or that any evidence developed will support only his age discrimination and retaliation claims.  But, at least at this stage, the Court cannot dismiss Williams's suspension- and termination-based race discrimination claims because, under this Circuit's caselaw, the allegations are sufficient to support an inference of racial discrimination.[5]

## CONCLUSION

For the foregoing reasons, the Court denies MediaLinks's motion for judgment on the pleadings.  A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*

_____
DABNEY L. FRIEDRICH
United States District Judge

March 13, 2023

---

[5] The Court notes, however, that as to Williams's first two alleged theories of liability—that Williams's pay and MediaLinks's failure to investigate Williams's claims were motivated by race discrimination, *see* Compl. ¶¶ 96, 98—Williams has not pleaded sufficient facts to support such a causal inference.  *See Beaulieu v. Barr*, No. 15-cv-896, 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019) (dismissing claim lacking allegations that comparator employees were treated differently or that supervisors made discriminatory statements); *Tolton v. Day*, No. 19-cv-945, 2020 WL 2542129, at *29 (D.D.C. May 19, 2020) (dismissing claim with only "threadbare recitals" of why pay comparators were similarly situated).  The Court therefore need not address whether these claims were timely raised, *see* Def.'s Mot. at 19–21, or constitute actionable adverse actions, *see supra* section III.B.